IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TAMMY L. NOAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:09-CV-346 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Tammy Noah ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. **PROCEDURAL HISTORY**

Plaintiff filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 31, 2004 and September 23, 2004, respectively, alleging a

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disability onset date of February 16, 2003. (Tr. at 18.)[2] Her applications were denied initially (Tr. at 82-86) and upon reconsideration. (Tr. at 77-79.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge, (Tr. at 72), which was held on February 29, 2008. (Tr. at 18.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 28) and, on March 10, 2009, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 2-4.)

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant met the insured status requirements of the Social Security Act through June 30, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since September 23, 2004, the amended onset date . . . .
>
> 3. The claimant has the following severe combination of impairments: degenerative disc disease, depression, and anxiety . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . .
>
> 5. . . . .[T]he claimant has the residual functional capacity to: sit for 6 hours of an 8-hour day; stand/walk for 2 hours of an 8-hour day; frequently lift/carry light items; and occasionally lift 10 pounds. She would be further limited to unskilled work secondary to her depression and anxiety.

(Tr. at 20, 22.) In other words, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for the "full range of sedentary work." (Tr. at 28.) The ALJ concluded that

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. 5].

2

Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date of September 23, 2004 through the date of the decision. (*Id.*)

II. **LEGAL STANDARD**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." *Hunter*, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." *Mastro*, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to

3

differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the] ALJ." *Hancock*, 667 F.3d at 472.  The issue before this Court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock*, 667 F.3d at 472 (*citing* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).  "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Id.*  The claimant bears the burden as to the first four steps, but the Government bears the burden as to the fifth step.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry.  In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The

4

second step determines if the claimant is 'severely' disabled. If not, benefits are denied." *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries his or her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, "the claimant is disabled," and there is no need to proceed to step four or five. *Mastro*, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id.* at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. *Id.* at 179-80. If the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." *Hines*, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work, considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall*, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. *Hines*, 453 F.3d at 567.

III. **DISCUSSION**

In the present case, the ALJ found that the Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential

5

evaluation process. At step two, the ALJ further determined that Plaintiff suffered from three severe impairments: degenerative disc disease, anxiety, and depression. (Tr. at 20.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Therefore, Plaintiff's RFC was assessed, and the ALJ determined that the Plaintiff could perform only sedentary work, such that she could not return to her past relevant work under step four of the analysis. However, the ALJ ultimately concluded at step five that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 28.)

Plaintiff argues the Commissioner's RFC assessment or his step five determination is not supported by substantial evidence. In particular, Plaintiff claims that the ALJ (1) failed to properly evaluate the opinion of Dr. Robert Borgman, an examining psychologist, and (2) "erred in equating moderate difficulties with concentration, persistence or pace with unskilled work" at step five. (Pl.'s Br. [Doc. 8] at 4-5.) Plaintiff contends that, "[a]t the very least . . . vocational expert testimony [is needed] to determine the impact of [her] mental limitations on the occupational base for sedentary work." (Pl.'s Br. at 12.) Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. (Def.'s Br. [Doc. 11] at 20.)

A. Physician Opinion

Plaintiff first claims that, in assessing Plaintiff's RFC, the ALJ erred by failing to "assign any particular weight" to the opinion of Dr. Borgman, a clinical psychologist who examined Plaintiff on two occasions and testified at her hearing. (Pl.'s Br. at 11-12.) Dr. Borgman opined that Plaintiff's depression and anxiety would interfere significantly with her concentration and activities of daily living, that the pace of her work would be compromised by hallucinations and

6

panic attacks, and that she would have difficulty interacting with coworkers and performing a regular work week. (Tr. at 50-51.)

The ALJ largely discounted this testimony in his decision, noting that "the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through representative referral and in connection with an effort to generate evidence for the current appeal." (Tr. at 25.) Accordingly, the ALJ determined that Dr. Borgman was not a treating source and that his opinion was not entitled to controlling weight. *See* 20 C.F.R. § 404.1502 (defining a non-treating source as one with whom Plaintiff's relationship was "not based on [Plaintiff's] medical need for treatment or evaluation, but solely on [her] need to obtain a report in support of [her] claim for disability"). Plaintiff does not appear to challenge the designation of Dr. Borgman as a non-treating source. Rather, she challenges the ALJ's failure to assign a specific weight to Dr. Borgman's opinion. (Pl.'s Br. at 12.)

Where an ALJ evaluates an opinion of a medical source, regardless of whether the source is treating or non-treating, he must explain and give reasons for the weight given to the opinion. 20 C.F.R. § 416.927(f)(ii). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." *Thomas v. Comm'r of Soc. Sec.*, No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011)). Contrary to Plaintiff's assertion, such an explanation need not be explicit. "Implicit assignments of weight can support meaningful review" so long as the ALJ's opinion "make[s] clear that [he] 'recognized and evaluated the treating relationships' of medical sources." *Thomas*, 2012 WL 670522, at *7 (citations omitted).

In the present case, the ALJ adequately indicated the weight he assigned to Dr. Borgman's opinion. After discussing his reasons for discounting Dr. Borgman's testimony, the ALJ concluded as follows: "Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." (Tr. at 25.) This statement conveys that, while Dr. Borgman's opinion was not entitled to controlling weight, it nonetheless merited some degree of consideration. Significantly, like the opinions of Drs. Schmid and Brown, to which the ALJ assigned "little weight," none of the mental limitations suggested by Dr. Borgman appear in Plaintiff's RFC, indicating that the latter medical opinion was assigned little weight as well. (*See* Tr. 25-26.) This implicit assignment is sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the opinion. Therefore, substantial evidence supports the ALJ's determination.

B.      Step Five Determination

Plaintiff next argues that the ALJ "erred in equating moderate difficulties with concentration, persistence or pace with unskilled work" at step five of the evaluation. At step five, the Government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[3] the ALJ may apply the Social Security Administration's medical-vocational guidelines (the "grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. *See McLain v. Schweiker*, 715 F.2d 866, 870 n.1 (4th Cir. 1983).

---

[3] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b); 416.969a(b).

8

If, on the other hand, the claimant suffers from nonexertional limitations,[4] the grids are not determinative, and the ALJ must consider vocational expert testimony. *Id.*

Plaintiff contends that the grids failed to adequately account for her difficulties in concentration, persistence, or pace, such that the ALJ's reliance upon them was in error. However, "[a]lthough . . . reliance on the grids is precluded where the claimant suffers from a 'nonexertional impairment,' not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment.'" *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). Rather, "[t]he proper inquiry . . . is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.* This is a question of fact. *Id.; accord, Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982).

In the present case, the ALJ specifically took into account all of Plaintiff's nonexertional limitations, as described in her mental RFC assessments and other relevant medical evidence, when formulating Plaintiff's RFC and in determining her ability to perform basic work-related activities on a sustained basis. (Tr. at 27.) He concluded that Plaintiff had "demonstrated her ability to perform all of the mental activities generally required by competitive, remunerative, unskilled work," which he further defined as involving the following mental activities: "understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work−i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." (*Id.*)

---

[4] Nonexertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

9

Despite these findings, Plaintiff contends that her mental "limitations cannot be collapsed into unskilled work since they fail to take into account the requirement, even in unskilled work, to maintain concentration, persistence and pace during the course of an 8-hour workday." (Pl.'s Br. at 10.) Plaintiff's argument ignores the conclusions of two state agency psychological consultants, both of whom found that, despite her moderate difficulties in concentration and social functioning, Plaintiff could return to full-time work. (*See* Tr. at 290, 316.) The ALJ found these opinions persuasive, as they were consistent with other medical evidence. (Tr. at 26.) In short, substantial evidence supports the ALJ's finding that Plaintiff's nonexertional limitations do not restrict her ability to perform the full range of sedentary work.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's Motion for Judgment [Doc. 7] is **DENIED**, that Defendant's Motion for Judgment on the Pleadings [Doc. 10] is **GRANTED**, and that this action is **DISMISSED** with prejudice.

This the 11th day of June, 2013.

_____
UNITED STATES DISTRICT JUDGE